[Crim. No. 2995.   First Dist., Div. One.   July 28, 1954.]

THE PEOPLE, Respondent, v. ORLANDO C. BOONE, Appellant.

Harry S. Wainwright and Lionel Browne for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, William K. Coblentz and Victor Griffith, Deputy Attorneys General, for Respondent.

WOOD (Fred B.), J.—Convicted of violating section 288 of the Penal Code, defendant Orlando C. Boone has appealed from the judgment.

He claims insufficiency of the evidence, errors in the admission of evidence and instructions to the jury, and misconduct of the district attorney in his opening statement and in his argument to the jury.

### 1. SUFFICIENCY OF THE EVIDENCE

Defendant claims there was a failure to prove the age of the child upon whom the offense was committed. He says there was no testimony under oath as to the age; that the prosecutrix stated her age while being questioned as to her qualifications prior to taking the oath and not subsequently.

To the contrary, the record shows that after taking the oath, the prosecutrix testified, both upon direct and upon cross-examination, that she attained the age of 12 years on July 14, 1953, a little over two weeks after the commission of the offense. Also, her aunt, with whom she lived, testified to the same effect.

### 2. ERRORS IN THE ADMISSION OF EVIDENCE

The prosecutrix testified that defendant had intercourse with her once or twice a week over a period of two or three years; that she spoke to her aunt about it on many occasions, "all the time," telling her aunt she did not want to do it, and her aunt told her to "go ahead." Defendant now complains that the making of these complaints by the prosecutrix is hearsay as to him and could at most be admissible to corroborate her testimony and then only by the testimony of the person to whom the complaints were made. These objections, whatever their validity might have been if timely made, come too late. The testimony now challenged went in at the trial without the interposition of any objection of any kind whatsoever by the defendant. Indeed, upon cross-examination defendant brought out much of the same testimony a second time by questions which he propounded.

■ The offense charged was committed June 28, 1953. Three days later the prosecutrix became ill and was taken to a hospital where she had a miscarriage, delivering a fetus four months old. The district attorney asked one of the hospital doctors to read a pathological report descriptive of the fetus. Defendant's counsel objected for lack of a foundation. The foundation was then laid and the report was read into evidence. Defendant then objected and moved to strike the report upon the ground it was incompetent, irrelevant and immaterial. Defendant claims that denial of the motion was prejudicial error. The report may have been irrelevant but we do not see how it could have prejudiced defendant's case (14 typewritten lines of a technical medical description) particularly in view of the fact that a considerable amount of oral testimony concerning the miscarriage was given by the doctors without objection.

■ One of the doctors was asked if he had a conversation with the little girl in regard to how this condition had been brought about. To defendant's objection upon the ground of hearsay, the district attorney said he was not asking for the conversation, merely if there was a conversation. Upon allowance of the question, the doctor answered, ''Yes, I questioned her'' and that she gave him answers as to her condition. The district attorney then asked if she made a complaint about someone who had done something to her, to which defendant objected as improper, irrelevant and leading. The objection was overruled. The doctor answered, ''She answered my questions as I asked my questions,'' and this line of inquiry was not further pursued. Defendant's objection seems to be that the court here improperly allowed evidence of complaints made by the prosecutrix concerning defendant's conduct, complaints made too long after the event to be admissible. In fact, the doctors did not testify that she made any complaints. Even if the doctors had so testified, the prosecutrix' complaints to them would not necessarily be remote in time in view of the evidence that this was a continuous course of conduct and the evidence that defendant had threatened her bodily harm if she told anyone.

3. WAS PREJUDICIAL ERROR COMMITTED IN THE CROSS-EXAMINATION OF DEFENDANT'S CHARACTER WITNESSES?

The following questions (in substance) were asked during the cross-examination of defendant's character witnesses:

(1) Did you ever hear that defendant and Carmen Berry, to whom he was not married, lived together as man and wife? (2) If you had heard such a report would you still think that defendant had a good reputation? (3) The fact that he and she were living together, if you knew that fact, you would still say he had a good reputation for morality? (4) Did you ever hear that defendant and Carmen Berry were ejected from their place of residence because defendant was bringing men there for purposes of prostitution with her? (5) If you had heard such a report, would you still think that he had a good reputation?

█ Questions (1) and (4) were proper in the absence of a showing of bad faith. (*People* v. *Logan,* 41 Cal.2d 279, 287 [260 P.2d 20]; *People* v. *McKenna,* 11 Cal.2d 327, 335-336 [79 P.2d 1065]; *People* v. *Stevens,* 5 Cal.2d 92, 99-100 [53 P.2d 133].)

█ As to questions (2) and (5) there appears to be a divergence of opinion. In *People* v. *Beltran,* 94 Cal.App.2d 197, 210 [210 P.2d 238], we find the statement that the ''cross-examination should not have been extended to include inquiries as to what the witnesses personally might have thought his reputation if they had had additional information. (*People* v. *Neal,* 85 Cal.App.2d 765, 771 [194 P.2d 57].)'' But in *People* v. *McKenna, supra,* 11 Cal.2d 327, the appellant complained that ''the trial judge allowed the district attorney in cross-examining the defendant's character witnesses to ask them whether their opinion of her reputation for truth, honesty and integrity in the community in which she lives would be changed if they heard her character questioned because of certain acts done or statements made by her'' (p. 335) and the reviewing court held that the trial court ''properly allowed the questions asked by the district attorney'' (p. 336).

The McKenna case, a decision of the Supreme Court, is of course, controlling. It sanctions questions (2) and (5).

█ Question (3) was not in proper form, assuming as it did a fact not then in evidence and not proper for the prosecution to prove. (*People* v. *McDaniel,* 59 Cal.App.2d 672, 675-676 [140 P.2d 88].) However, that question was asked in that form of but one of the three character witnesses (question (2) was put to the other witnesses) and he replied that such knowledge would not change his opinion concerning the defendant's reputation. We conclude that the error of allowing this question did not prejudice the defendant.

■ Defendant claims that none of these questions dealt with a trait which was relevant to the reputation attested by the character witnesses upon direct examination, which he asserts pertained only to "truth, honesty and integrity," not "morality." He is mistaken. He asked the witness Bennett concerning the defendant's "reputation," without limitation or qualification as to kind. The same is true of the question he propounded to the witness Hunter. He did ask the witness Walker concerning defendant's reputation as to "honesty and truthfulness" but he made no objection to the questions asked of her upon cross-examination. It is too late now to tender such an objection.

The court instructed the jury at the time that the asking of such questions is not evidence of the existence of the facts implied in the questions.

In the absence of a showing of bad faith upon the part of the district attorney, the asking of these questions does not furnish a basis for reversal of the judgment.

4. WAS THE DISTRICT ATTORNEY GUILTY OF MISCONDUCT IN HIS OPENING STATEMENT?

■ The district attorney gave a short statement of facts he expected to prove; no facts concerning which he later failed to adduce evidence; expressed in simple narrative form, in no impassioned terms calculated to inflame the minds of the jury; bearing every indication that the statement was made in good faith. The district attorney prefaced his remarks with the explanation that what he was about to give the jury was not evidence and when he closed the court repeated that admonition to the jury.

We find nothing in that statement which partakes at all of misconduct, prejudicial or otherwise. Apparently the defendant's counsel thought so, too, at the time, for he entered in the record no objection or exception to any portion of the opening statement.

5. WAS THE DISTRICT ATTORNEY GUILTY OF MISCONDUCT IN HIS ARGUMENTS TO THE JURY?

■ Defendant's counsel states that in his argument to the jury the district attorney told them that the defendant had told the prosecutrix to keep her mouth shut, contrary to the testimony of the prosecutrix. What the district attorney did say was that while at the hospital the prosecutrix "was visited by Carmen Berry and the defendant Boone and she was told to keep her mouth shut." That was in line with the

prosecutrix's testimony that Carmen and the defendant came to talk to her at the hospital; that Carmen said "not to tell anyone"; that defendant did not say anything.

Defendant also assigns as misconduct the following statement which the district attorney made in argument before the jury: "little Maria, when she was brought to the hospital, was questioned by the doctor, and she told the doctor who was responsible for her condition. . . ." Defendant does not claim that this was an inaccurate statement by the district attorney. He says it was improper because defendant was not on trial for causing the pregnancy. The fact that she told the doctor who caused her pregnant condition, was put in evidence by the defendant when cross-examining the prosecutrix, not by evidence adduced by the prosecution.

We see no indication of bad faith or other official misconduct on the part of the district attorney. Moreover, defendant's counsel made no objection to these remarks, nor any assignment of misconduct, at the time the remarks were made. They furnish no basis for a reversal of the judgment.

### 6. DID THE COURT ERR IN THE GIVING AND REFUSAL OF CERTAIN INSTRUCTIONS?

Concerning the prosecutrix's testimony of previous acts defendant claims error because the court did not during the course of that testimony advise the jury that it should be considered for a limited purpose. Instead, near the beginning of the instructions given at the conclusion of the trial, the court advised the jury "Such evidence was received for a limited purpose only, not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question of whether the defendant Boone is innocent or guilty of the crime charged against him in this action on or about June 28, 1953." That seems entirely adequate. Defendant cites no authority for his point that such instruction should have been given as and when the evidence went in. Moreover, defendant made no request for any such instruction.

Defendant complains of the absence of an instruction advising the jury that the prosecutrix's testimony that she had complained from time to time to her aunt was hearsay as to the defendant Boone and not evidence against him. The answer is that such testimony went in without objection of any kind and defendant has not directed attention to any request of his for an instruction on this subject.

754

█ Defendant criticizes an instruction that in this case it is not essential that the testimony of the ''prosecution witness'' be corroborated by other evidence. He says it is not clear what witness the court referred to. He is mistaken. It is clear from the context and from the witnesses who had testified that the court had reference to the prosecutrix. In the very next paragraph the court observed that ''from the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore, I charge you that the law requires that you examine the testimony of the prosecuting witness with caution . . .''

Defendant also contends that the trial court, by telling the jury that the prosecution witness need not be corroborated, in effect told the jury that the prosecutrix could not be an accomplice and thus went far beyond the province of the court in a case where age or complicity is an issue. This, at most, was tantamount to a finding by the court that the prosecutrix was under 14 years of age. █ A child under that age cannot be an accomplice (*People* v. *Troutman*, 187 Cal. 313 [201 P. 928], and cases collected in 16 Cal.Jur. 12-14, section 10 and Supp. thereto).

█ We perceive no prejudice in such an instruction. The uncontradicted evidence by the testimony of the prosecutrix and her aunt showed that she was but 11 years old at the time of the commission of the offense charged. Also, defendant offered no evidence to the contrary, and from our examination of the record he appears to have made no issue concerning the age of the prosecutrix.

█ The court rejected as unnecessary an instruction requested by the defendant submitting to the jury the issue of the age of the prosecutrix expressed in the terms of CALJIC No. 522-A. The giving of this instruction would have been quite proper but its denial was not prejudicial for the reason, as already indicated, that the child's age was established by uncontradicted evidence and was not during the trial treated as an issue by the defendant, and the court fully instructed the jury concerning the elements of the offense, including the age of the victim.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.