[No. E046137. Fourth Dist., Div. Two. Aug. 6, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
SUNIL KUMAR BHASIN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III, IV, and VI.

462

## COUNSEL

Jackie Menaster, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Emily R. Hanks, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHLI, J.**—Defendant Sunil Kumar Bhasin was set to stand trial on a fraudulent loan transaction and identity theft in Riverside County Superior Court (*People v. Bhasin*, No. RIF090125) for a car loan involving a 1994 Mercedes-Benz. Just days prior to trial, defendant went to the Redlands Department of Motor Vehicles (DMV), located in San Bernardino County, and gave them false information regarding the registered owner of the Mercedes. The DMV, based on this information, generated a report of deposit of fees (RDF) that listed John Ferguson (the person whose identity defendant was charged with stealing and in whose name he allegedly obtained a

fraudulent loan) as the registered owner of the Mercedes. Bhasin gave his counsel the RDF, and counsel cross-examined Ferguson with the document based on his denial at trial that he was ever the registered owner of the Mercedes.

The prosecution immediately questioned the authenticity of the RDF, since it had never before seen the document, it had been recently generated, and all other DMV documents showed that Ferguson was not the registered owner of the Mercedes. After further investigation, it was discovered that defendant had obtained the document containing the false information. A mistrial was declared, and the Riverside County District Attorney's Office filed charges in this case of preparing false documentary evidence and offering forged, altered, or antedated documentary evidence at a trial.

Defendant was convicted of both charges. Defendant now contends on appeal:

1. The trial court erred by refusing to substitute in as counsel an attorney who had represented his codefendant in the underlying fraud and identity theft trial, thus denying defendant his right to counsel of his choice under the federal and state Constitutions.

2. The trial court improperly allowed his prior attorney to testify that defendant gave the RDF document to counsel, as it violated the attorney-client privilege.

3. Insufficient evidence was presented to support his convictions of violating Penal Code sections 132 and 134.[1]

4. Riverside County was not the proper venue for prosecution of the violation of section 134.

We find that substantial evidence supports defendant's convictions and that there were no prejudicial trial errors. We affirm the judgment in its entirety.

I

PROCEDURAL BACKGROUND

Defendant was found guilty by a jury of preparing false documentary evidence (§ 134) and offering forged, altered, or antedated documentary

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

evidence at trial (§ 132). On June 20, 2008, defendant was sentenced to 36 months of formal probation.

## II

## FACTUAL BACKGROUND

The acts of defendant that gave rise to the convictions in this case occurred while defendant was brought to trial in 2002 for charges that he stole John Ferguson's identity and secured a fraudulent loan in Ferguson's name.

Sometime prior to 2002, defendant had asked Ferguson to tow a 1994 Mercedes that had no engine or transmission to Riverside (specifically, defendant's medical office) from Orange County. The car was in the possession of Auto Market, which was owned by several brothers with the last name of Dawood. In exchange, Ferguson was told by defendant that he could build his credit by signing a loan on the car. Ferguson understood that he would sign the loan papers but would not receive any money or the car. Ferguson signed the bill of sale on the Mercedes when he picked it up from Auto Market. He transported the Mercedes to defendant.

A loan application and pay stubs in Ferguson's name were submitted to the USAA Federal Savings Bank (USAA) in San Antonio, Texas. The bank issued a $50,000 loan based on the Mercedes as collateral, on the representation that Ferguson earned between $50,000 and $80,000 a year, which was not the case as he was just doing handyman work on a part-time basis for defendant. USAA deposited the money into a bank account bearing a company name that defendant owned. The money was immediately withdrawn from the account. Defendant made one payment to USAA. The car disappeared and was found on a street in San Bernardino County in 2003. It was eventually sold at a lien sale by the towing company. The Mercedes was unregistered from 1999 to 2003. Suspicion arose regarding the transaction and defendant was interviewed by police as to how he obtained the loan proceeds. He initially stated that Ferguson bought the car with his own money. He then claimed that he loaned Ferguson the money to buy the car and received the loan check from USAA because he had agreed to do repair work on the Mercedes for Ferguson. Defendant claimed he gave back the remaining loan proceeds to Ferguson after he fixed the car.

A search of defendant's office revealed documents in Ferguson's name, including the loan papers between Ferguson and USAA for the Mercedes.

The address listed for Ferguson (184 Sir Bedivere) was actually a motor home occupied by the Dawood brothers, who owned Auto Market, and Ferguson denied that he had ever lived there. There were several credit card applications in Ferguson's name and in the name of a company called Custom Motors. There was also a credit report in Ferguson's name. Some of the applications had Ferguson's name forged and others Ferguson actually signed.[2]

Charges were brought against defendant and the Dawood brothers in Riverside County for the loan fraud and identity theft based on defendant's using Ferguson's name to get the car loan from USAA and the use of fraudulent information. George Dunlop, defendant's attorney, announced ready for trial, and it was set to begin on October 7, 2002.

On October 3, 2002, defendant went to the DMV. Apparently, the DMV generates an RDF if a person presents evidence of the sale of a vehicle and wants to transfer the title and registration on the vehicle. Defendant presented some documents (that were not admitted at trial) to the DMV clerk in order to show there would be a transfer of title and to prove the registered owner for the Mercedes. The RDF obtained by defendant listed those items that must be completed in order to transfer the title and registration for the Mercedes. Defendant did not present to the DMV clerk a valid driver's license for Ferguson, he did not have permission to transfer the title from the lienholder, and he did not pay any fees. All the information needed to create the RDF would have been based on information given by defendant. The registered owner need not be present to get this report. The RDF listed John Ferguson, Custom Motors, as the registered owner, or "R/O," with the address listed as 184 Sir Bedivere in Riverside. The legal owner was listed as USAA. All other DMV records showed that Ferguson was not the registered owner of the Mercedes.

Sometime during the trial, defendant gave the RDF to Dunlop. Dunlop did not confirm the document's authenticity. During cross-examination of Ferguson, Dunlop marked the RDF as a defense exhibit and read the report to Ferguson into the record. He showed the report to Ferguson on several occasions both to impeach Ferguson and to prove that Ferguson was in fact the registered owner of the Mercedes.

After Dunlop finished his cross-examination of Ferguson, he gave the RDF to the prosecutor of the first trial, Deputy District Attorney (DDA) Samuel Long. DDA Long became suspicious because the RDF had been generated during the proceedings and because the information possessed by DDA

---

[2] There was evidence presented at the first trial that Ferguson listed the address as his place of residence on his driver's license.

Long was that Ferguson was not the owner. DDA Long had not seen the document prior to that day. A district attorney investigator employed by Riverside County, Gerald Fox, was assigned to confirm the authenticity of the document.

Fox obtained a videotape from the DMV that showed defendant in the DMV on October 3, 2002, at the same time the RDF was generated, which was shown to the jury.[3]

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### V

### INSUFFICIENT EVIDENCE OF BOTH COUNTS

Defendant contends that insufficient evidence was presented to support his convictions for violations of sections 132 and 134.[4]

#### A. *Standard of Review*

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [40 Cal.Rptr.3d 118, 129 P.3d 321], limited by *People v. Rundle* (2008) 43 Cal.4th 76, 151 [74 Cal.Rptr.3d 454, 180 P.3d 224].) Rather, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 [75 Cal.Rptr.3d 289, 181 P.3d 105].)

---

[3] A mistrial was declared in the fraud and identity theft trial. Defendant was then charged with preparing and offering false evidence in this case.

*See footnote, *ante,* page 461.

[4] The trial court denied defendant's motion pursuant to section 995 to dismiss the counts finding that (1) violation of section 134 was supported by representations by defendant to the DMV that caused it to generate the false report, and (2) violation of section 132 was supported by the fact that defendant had marked the RDF as evidence and utilized it in cross-examining Ferguson, and it would have come in regardless of who introduced the document.

## B. *Section 132*

Defendant first contends there was insufficient evidence presented that he "offered into evidence" the RDF at the underlying trial to support his conviction for violating section 132.

Section 132 provides: "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, *offers in evidence*, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of felony." (Italics added.)

■ "The phrase 'offers in evidence' must be construed in the context of and harmonized with the other words in section 132." (*People v. Pereira* (1989) 207 Cal.App.3d 1057, 1063 [255 Cal.Rptr. 285] (*Pereira*).) In *Pereira*, the court stated: "The act characterizing a violation of section 132 is an offer in evidence occurring 'upon any trial, proceeding, inquiry,' or investigation whatever, authorized or permitted by law . . . .' '[A]ny . . . proceeding, inquiry, or investigation whatever, authorized or permitted by law' bespeaks a broad range of formal as well as informal settings in which an '[offer] in evidence' may constitute a violation of the section." (*Id.* at pp. 1063–1064.) As such, the *Pereira* court interpreted the phrase "offer in evidence" as "not [being] used in a technical sense or as a term of art." (*Id.* at p. 1064.) It concluded: "Manifestly, the scope of section 132 extends beyond those situations involving the formal introduction in evidence of documents in a court of law." (*Id.* at p. 1067, fn. omitted.) In *Pereira*, the court concluded that the "tender of documents pursuant to a subpoena duces tecum" was sufficient to meet the element of "offer in evidence" of section 132. (*Pereira*, at p. 1064.)

■ Here, defendant interprets the language in section 132 as a "term of art" in concluding that he must have moved the RDF into evidence in order to have violated this section. (*Pereira, supra*, 207 Cal.App.3d at p. 1064.) The fact that defendant gave the RDF to his attorney, it was used in cross-examination of Ferguson, it was read into the record, and it was marked for identification by defendant clearly was an offer of evidence within the meaning of section 132. The fact that the prosecution sought to move the RDF into evidence (without objection from defendant's counsel) was not imperative to a conviction of section 132. There simply is no requirement that a document must be moved into evidence in order to constitute a violation of section 132. We believe the evidence supported a finding that the RDF was offered into evidence within the meaning of section 132.

## C. *Section 134*

■ In order to secure a conviction for a violation of section 134, the prosecution must prove beyond a reasonable doubt that (1) the defendant prepared a false or antedated book, paper, record, instrument in writing, or other matter or thing, (2) with the intent to produce it, or allow it to be produced as genuine or true upon any trial, proceeding, or inquiry authorized by law, (3) for any fraudulent or deceitful purpose. (§ 134.) Relying on familiar principles of statutory interpretation, defendant contends there was insufficient evidence here to sustain his conviction for violating section 134 because he did not *prepare* the document at issue, the DMV prepared the document.

■ " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) In determining that intent, we first examine the words of the statute, applying " 'their usual, ordinary, and common sense meaning based upon the language . . . used and the evident purpose for which the statute was adopted.' " (*People v. Granderson* (1998) 67 Cal.App.4th 703, 707 [79 Cal.Rptr.2d 268], quoting *In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].) " 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.]" (*Coronado*, at p. 151.) If the words of the statute are ambiguous, a court may resort to "extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Ibid.*) Applying these rules of statutory interpretation, a court " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Ibid.*)

The word "prepare" is unambiguous. "Prepare" means "to make ready beforehand for some purpose," "to put together[,] . . . make, produce," "to put into written form: draw up," or "to make . . . ready: get ready." (Webster's 3d New Internat. Dict. (1993) p. 1790.) Black's Law Dictionary (6th ed. 1990) at page 1182 defines "prepare" as "[t]o provide with necessary means; to make ready; to provide with what is appropriate or necessary."

We believe that the actions of defendant in this case constituted preparation of a false document to be produced at trial. According to testimony presented at trial, defendant obtained the RDF. The document itself showed that the

person who identified himself as Ferguson did not have a valid driver's license and did not bring the fees to actually transfer title to the Mercedes. All other information from the DMV showed that Ferguson was not the registered owner.

Defendant manipulated the DMV into creating a document based on false information given by him. We believe the fact that defendant did not physically make the document is not fatal to a conviction under section 134.

We believe that this interpretation of the statute meets the objective of the statute. The objective of section 134, and the other sections embodied in title 7, chapter 6, entitled "FALSIFYING EVIDENCE, AND BRIBING, INFLU-ENCING, INTIMIDATING OR THREATENING WITNESSES" "is to prevent the fraudulent introduction of material in a proceeding under the authority of law." (*People v. Clark* (1977) 72 Cal.App.3d 80, 84 [139 Cal.Rptr. 817].) If we were to conclude that defendant, clearly a savvy man, could avoid prosecution under section 134 by being smart enough to have someone else create a fraudulent document for him, it would defeat this purpose. (See also *People v. Fields* (1980) 105 Cal.App.3d 341, 345, fn. 3 [164 Cal.Rptr. 336] [purpose of § 134 is "protecting the integrity of evidence in pending formal proceedings"].)

■ The bottom line in this case is that the RDF contained false information that was provided by defendant. Defendant went to the DMV and obtained this document clearly by providing some sort of false information. He sought to use the document at his trial in order to benefit himself. To conclude that section 134 narrowly defines the preparation of a document to requiring that the person actually physically create the document would both be absurd and defeat the objective of the statute.

Based on the foregoing, there was substantial evidence supporting defendant's convictions for violating sections 132 and 134.

## VI

## VENUE*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 461.

## VII

## DISPOSITION

We affirm the judgment in its entirety.

Hollenhorst, Acting P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 2009, S176267.